UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 21-cv-21484-MORENO/GOODMAN

CAR BODY LAB INC.,

     Plaintiff,

v.

LITHIA MOTORS, INC.,

     Defendant.

_____/

## REPORT & RECOMMENDATION ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

*"Defer no time, delays have dangerous ends."*

    -  William Shakespeare (1564-1616) (Henry VI, part 1: Act 3, Scene 2)

*"Delay always breeds danger."*

    -  Spanish writer Miguel de Cervantes (1547-1616)

*"You may delay, but time will not."*

    -  Benjamin Franklin (1706-1790)

Plaintiff, Car Body Lab, Inc. filed a Complaint against Defendant, Lithia Motors,

Inc., alleging trademark violations under the Lanham Act (and other federal and state

claims) for Lithia's purported infringing use of Car Body's registered DRIVEWAY mark

in Lithia's automotive repair business. [ECF No. 1]. The Complaint says that Lithia's acts caused likelihood of consumer confusion. A week later, Car Body filed its *Expedited* Motion for Preliminary Injunction. [ECF No. 23]. The motion says there is an "urgent need" for a preliminary injunction and contends that Lithia's intentional use of an identical mark is "causing substantial harm to Car Body that cannot be remedied only by damages." *Id.* at pp. 1-2.

United States District Judge Federico A. Moreno referred the motion (i.e., all pretrial proceedings) to the Undersigned. I granted Car Body's request for a hearing by holding a 6.25-hour evidentiary hearing. [ECF Nos. 36; 79].

Car Body's memorandum alleges that Lithia's infringing and unlawful conduct is "causing growing harm" to Car Body's business. Its proposed order asks this Court to, among other measures: (1) enjoin Lithia from selling, advertising, marketing or promoting automotive goods and services under or using a mark which includes the term "driveway;" (2) enjoin Lithia from holding itself out as the owner or authorized user of a DRIVEWAY mark; (3) enjoin Lithia from using the driveway.com website and to immediately take down and disable the website; (4) enjoin Lithia from pursuing its Petition for Cancellation of Car Body's registered DRIVEWAY mark; (5) require Lithia to immediately issue a press release acknowledging that Car Body is the registered owner of the DRIVEWAY mark (and that Lithia has no right or authority to use the mark); and (6) require Lithia to produce a verified accounting of its gross revenues and net profits

concerning the sales of goods and services using the DRIVEWAY channel. [ECF No. 23-1].

The Undersigned will not recommend these steps.

Car Body's motion contends that it is *now* in an emergency scenario, requiring urgent action. But its pre-motion conduct belies its current allegations.

Car Body first advised Lithia that it considered Lithia to be an infringer in a June 3, 2020 letter, and its attorney advised Lithia in a September 2, 2020 letter that **Lithia was subject to injunctive relief**. But Car Body did not file its lawsuit until April 16, 2021, and it did not file its expedited motion for a preliminary injunction until April 23, 2021.

This significant delay is the antithesis of irreparable harm and a need for prompt action to remedy an urgent predicament. Car Body says it has an explanation for the delay: it wanted to first obtain discovery from Lithia in litigation before the United States Patent and Trademark Office ("USPTO") appeal board, where injunctive relief is unavailable. It also says it was trying to resolve the dispute through conversations with a Lithia executive. The Undersigned does not deem these grounds to be an adequate explanation for the lengthy delay.

Because courts often deny requested preliminary injunctions after delays of only four or five months (and sometimes even shorter delays), the 10-month delay here is reason enough to justify an Order denying the requested extraordinary relief. The Undersigned therefore **respectfully recommends** that Judge Moreno **deny** the self-

described "expedited" motion for a preliminary injunction.

This recommendation, if it were to be adopted and followed, would not necessarily mean that Car Body will ultimately lose its lawsuit. Likewise, it would not guarantee Lithia a victory, either. Indeed, this recommendation does not even address the substantive strength of Car Body's allegations of trademark infringement and its other claims. It does not reach any conclusions about whether Car Body is likely to succeed on the merits. So, it may well be that Car Body may ultimately prevail and obtain damages. It will simply have to wait (for a summary judgment ruling, if available, or for a trial) to see if it is entitled to damages.

**Factual and Legal Background**

**Car Body** submitted the following allegations in the relevant facts section of its Complaint:

Car Body was founded by Miami resident Rudy Joudet in January 2017 to bring high-quality automotive repairs straight to consumers by performing the work on their cars at their homes or offices. Car Body uses vetted local technicians equipped with mobile units, achieving prompt-response and same-day turnaround times for optimal customer convenience and satisfaction, and at a fraction of the costs charged by brick-and-mortar establishments.

Car Body provides its automotive repair services through an online platform and

4

an interactive, mobile-accessible, optimized website with portals that allow customers to make direct online inquiries, request and receive repair estimates, contract automotive repair services, schedule appointments, request telephone customer service, engage in digital follow-up communications with customer service personnel, and pay for completed work using their electronic and mobile devices.

Car Body uses the DRIVEWAY mark in commerce to identify the origin of its automotive repair services.

In mid-2019 – after confirming that DRIVEWAY was an available mark and conducting online market-testing of the DRIVEWAY brand – Car Body began its DRIVEWAY re-brand campaign, into which it invested significant resources to develop, promote, protect, and nurture its distinctive DRIVEWAY brand and mark.

Included in those efforts: Car Body hired a marketing firm; purchased a new domain name; redesigned its website; conducted online market research; created marketing materials (including online commercials and social media advertisements); prepared "pitch decks" and other investor materials; designed its new DRIVEWAY logo and the exterior appearance of its DRIVEWAY promotional van; ordered and distributed T-shirts and merchandise with its new DRIVEWAY logo to staff and repair technicians; and applied to the USPTO for registration of its DRIVEWAY service mark for and in connection with "automobile body repair and finishing for others; automobile painting; repair of automobiles, namely, automobile body repair" ("automotive repair services").

5

Car Body applied for registration of its DRIVEWAY mark on July 12, 2019.

The USPTO approved Car Body's trademark registration application on April 28, 2020, granting Car Body the right to nationwide, exclusive use of the DRIVEWAY mark in connection with the automotive repair services specified in the Certificate of Registration, as of July 12, 2019 (the date of Car Body's application).

Car Body began using the DRIVEWAY mark in commerce by December 29, 2019.

As part of its business model, Car Body spends a significant portion of its operating budget marketing and advertising its DRIVEWAY brand and integrating its DRIVEWAY mark into online promotional and sales materials required to sustain and grow Car Body's digitally based business. Consumers have come to associate the DRIVEWAY mark with Car Body's automotive repair services.

After Car Body launched its DRIVEWAY brand, it experienced substantial growth in revenue and market share, significant increases in investor interest, and strengthening consumer association between its registered DRIVEWAY mark and the source and origin of the high-quality, at-home automotive repair services provided by Car Body.

Car Body's DRIVEWAY brand is highly regarded by consumers and has generated a slew of positive customer reviews that tout the high quality of the automotive repair services provided by Car Body under its DRIVEWAY mark, as well as the affordability of the charges and the "fantastic" ease of the customer experience. The reviewing customers and the Google page map pinpointing Car Body's California location expressly

refer to the company as DRIVEWAY.

Lithia, a publicly-traded (NYSE:LAD), Fortune 500 company, and one of the largest nationwide automotive retailers, operates through a network of vehicle centers and dealerships throughout the United States, including Florida.

Lithia had constructive notice and/or actual knowledge of both Car Body's DRIVEWAY trademark application and the USPTO's registration of Car Body's DRIVEWAY mark; nevertheless, Lithia filed ten "intent to use" applications seeking registration of the same DRIVEWAY mark for Lithia's competing business (two in October 2019, six in January 2020, and two in June 2020). All of Lithia's DRIVEWAY applications were rejected, specifically because (as determined by the USPTO) Car Body is the senior, priority user of the mark and Lithia's similar mark creates a likelihood of consumer confusion.

Despite the uniform rejection of its trademark registration applications, Lithia nevertheless is using a DRIVEWAY mark in commerce as part of its self-proclaimed new e-commerce "DRIVEWAY" branding campaign, which it launched in the Pacific Northwest in late 2020 and is expanding nationwide (including in Florida), notwithstanding Lithia's actual knowledge that Car Body is the mark's registered owner.

As part of Lithia's nationwide "DRIVEWAY" campaign, Lithia has integrated its infringing DRIVEWAY mark into its print and online marketing materials, investor materials, SEC filings, new website, and into the names of its affiliated entities, as

reflected in its numerous Secretary of State filings in Oregon, Florida, and nationwide.

On or about October 21, 2020, Lithia's President and Chief Executive Officer appeared in a nationally broadcast interview (CNBC's Mad Money with Jim Cramer), touting Lithia's infringing DRIVEWAY mark and the rollout of its "DRIVEWAY" branding campaign, further infringing on Car Body's registered DRIVEWAY mark.

In addition to Lithia's infringing acts in the marketplace, Lithia also filed a petition with the Trademark Trial and Appeals Board ("TTAB") on August 14, 2020, seeking cancellation of Car Body's registered DRIVEWAY mark. Lithia has not abated its unauthorized use of a DRIVEWAY mark pending resolution of the TTAB cancellation proceedings; but, instead, has aggressively pressed forward and expanded its infringing acts and footprint into additional geographical markets.

Car Body contends that, absent immediate judicial intervention, Lithia will continue its infringing and unlawful actions that are harming Car Body, which will create a substantial risk of irreparable harm to Car Body and pollute the marketplace with a likelihood of consumer confusion.

Therefore, in addition to monetary damages and awards, Car Body also seeks injunctive relief, including a preliminary injunction that restrains and enjoins Lithia, its agents, and those in active concert or participation with them, from continuing to use a DRIVEWAY mark during the pendency of this litigation.

**Lithia** provided the following allegations in support of its opposition to the

requested preliminary injunction:

Lithia is a national automotive retailer headquartered in Medford, Oregon. Founded by Walt DeBoer in 1946, Lithia started as a single dealership in Ashland, Oregon. Following in his father's footsteps, Walt's son and his business partner grew Lithia to include five stores and nineteen franchises. Now Lithia is one of the largest providers of personal transportation solutions in the United States.

Lithia, through its www.driveway.com website, allows consumers to buy or sell vehicles digitally or through any of its locations across the country, and offers mechanical maintenance or repair services for vehicles.

Lithia's first use of the DRIVEWAY mark dates back years before Plaintiff ever contemplated adopting the mark for its mobile autobody repair service. In early 2016, as a way to combine marketing efforts among three of its large automobile dealers located in the same area of Medford, Oregon, Lithia adopted and commenced use of various DRIVEWAY-formative trademarks.

Lithia used these marks to advertise, market, and sell automobiles and automotive financing offered through its ecommerce website and its used automotive dealerships, which also offered financing and automotive repair services (the "DRIVEWAY Services"). In connection with providing these services, Lithia used the marks DRIVEWAY and DRIVEWAY 5 (Lithia's "DRIVEWAY Marks").

Between 2016 and 2019, Lithia expended more than $3,800,000 in connection with

an interstate marketing campaign using Lithia's DRIVEWAY Marks. This marketing campaign included multiple television and radio campaigns, online advertisements, and direct mail promotional materials. Lithia also used its DRIVEWAY Marks in connection with its services offered online through its website located at www.lithia.com/driveway-5.com (the "Driveway 5 Website").

The Driveway 5 Website contained numerous uses of Lithia's DRIVEWAY Marks, including in a large prominent banner across the top of the website. To protect its rights in its DRIVEWAY marks, Lithia also registered the domains in 2016, using them to redirect customers to Lithia's Driveway 5 Website.

Lithia's marketing campaign under its DRIVEWAY Marks proved to be a success. From 2016 to 2019, using its DRIVEWAY Marks, Lithia's revenues totaled approximately $185,265,737, with interstate users from at least 43 different states across the United States accounting for approximately $25,516,120 of those sales. Lithia has continuously used its DRIVEWAY Marks in connection with its sales of automobiles and other related services since 2016 and continues to do so now.

Based upon its past use and the success of its services offered under the DRIVEWAY Marks, in January 2019, Lithia began the process of expanding its use of the mark to cover more services across the nation.

On October 3, 2020, Lithia filed two trademark applications for the marks, DRIVE WAY (App. Serial No. 88640798) and DRIVEWAY (App. Serial No. 88640781), in

connection with its automobile dealership services. That same month, Lithia registered the domain name and began preparing designs for its new website (the "Driveway Website"). This new website, located at www.driveway.com, ultimately replaced Lithia's Driveway 5 Website and was intended to be used in connection with the ongoing offering and promotion of Lithia's services under the DRIVEWAY mark.

Additionally, during 2019, Lithia began developing and engineering computer software and online resources needed to digitize its vast automotive dealership services. In January 2020, Lithia officially launched the Driveway Website, initially offering the sale of pre-owned cars, which by July 2020 included approximately 20,000 used vehicles.

By the fourth quarter of 2020, the full range of Lithia's DRIVEWAY services were available through the website. Around the same time, in July 2019 — three years after Lithia first began using its DRIVEWAY Marks — Plaintiff applied for a trademark registration for the DRIVEWAY mark in connection with automobile body repair and painting on an intent-to-use basis.

Plaintiff's business, including the services offered under the DRIVEWAY mark, focuses narrowly on providing "same-day" mobile auto body repair and painting services, performed in customers' driveways using local technicians.

Soon after Lithia launched its Driveway Website, on January 8, 2020, Lithia learned of Plaintiff's DRIVEWAY trademark application. Lithia received notice from the USPTO that Lithia's two initial DRIVEWAY applications were suspended in light of Plaintiff's

DRIVEWAY application and one additional pending DRIVEWAY application owned by a third party.

That same month, Lithia filed a series of additional trademark applications for the DRIVEWAY mark covering a broad range of automobile-related goods and services that it had offered or planned to offer, including downloadable computer software, online dealership services, motor vehicle repair services, financial and loan services, shipping services for automobiles, and online computer services.

The next month, in February 2020 — after responding to a finding by the USPTO examiner that the term "driveway" was "merely descriptive" of Plaintiff's mobile body repair services — Plaintiff filed its Statement of Use in connection with its trademark application, alleging that its first use of the DRIVEWAY mark in connection with auto body repair services occurred on December 29, 2019 — more than three years after Lithia began using DRIVEWAY.

Plaintiff was issued a trademark registration for its DRIVEWAY mark on April 28, 2020 (Reg. No. 6044046) ("Plaintiff's Registration").

On May 12, 2020, counsel for Lithia sent a letter to Plaintiff, advising it of Lithia's prior rights in its DRIVEWAY Marks dating back to 2016, and its pending trademark applications. In response, in June 2020, Car Body Lab claimed to have superior rights to the DRIVEWAY mark and alleged that *Lithia* was infringing Car Body Lab's rights to the mark.

Due to Lithia's claim to have prior rights to the mark, the parties began discussing potential resolutions regarding Plaintiff's use of the DRIVEWAY mark. Attempting to avoid litigation, Lithia's Senior Vice President and Chief Innovation & Technology Officer, George Hines, had several phone calls with Joudet to discuss potential resolutions.

Hines explained in detail to Joudet the various services Lithia offered under its DRIVEWAY mark. During that call, Hines advised Joudet that Lithia had registered the domain name and was offering services through the Driveway Website. While on the phone with Hines, Joudet visited the website. Over the next week, the parties explored potential resolutions, including offers from Joudet to sell Plaintiff's current, registered rights to the mark, but they were unable to resolve the dispute.

On August 14, 2020, Lithia filed its Cancellation Petition, asserting its priority as to the use of "DRIVEWAY" in connection with a broad range of automotive services and because Plaintiff's DRIVEWAY mark is merely descriptive (the "Cancellation Proceeding"). This petition initiated the TTAB proceeding.

For months before the Cancellation Proceeding began — since at least May 2020 — Plaintiff was aware of Lithia's DRIVEWAY Marks, its related trademark applications, and the expansive services Lithia offers under its DRIVEWAY Marks. Despite this knowledge, Plaintiffs waited more than eleven months — eight of which had been spent litigating a similar dispute involving the same marks in the Cancellation Proceeding —

to file its complaint and seek a preliminary injunction along with expedited discovery.

Plaintiff initially attempted service by certified mail, which is both significantly slower than personal service and did not comply with applicable law. Plaintiff was then forced to re-serve Lithia, delaying yet another week in seeking its purportedly urgent need for injunctive relief.

In its Reply, **Car Body** offered the following additional alleged facts:

The "Winner's Circle Driveway 5" and "Driveway-5" used by Lithia are not and were not "marks" (i.e., used to identify Lithia's goods and services and distinguish them from the goods and services of other providers). Instead, they were geographical descriptors used by only three Lithia dealerships that – unlike Lithia's dozens of other dealerships in Oregon, in Medford, in the United States, and on Grumman Drive – were located off of the "Winner's Circle" turn-around at the end of the fifth driveway ("Driveway 5") on Grumman Avenue in Medford, Oregon.

Lithia used a directional sign, which contains a banner that reads, **"WINNER'S CIRCLE."** Underneath the banner are driving instructions – **"ENTER HERE"** – followed by a large bright red directional arrow pointing to the words **"DRIVEWAY 5 ON GRUMMAN DRIVE."** At the bottom, the registered marks of the Medford VW, Medford BMW, and Medford Nissan appear – the only three Lithia dealerships referenced in the documentary materials submitted in support of Lithia's opposition, out of the dozens of Lithia dealerships that existed at the time, including other Lithia dealerships in Medford,

Oregon, and on Grumman Drive.

Satellite images of Grumman Drive in Medford, Oregon show the geographical locations of the three Lithia dealerships (Lithia Nissan of Medford, Medford BMW, and Lithia Medford Volkswagen) that are referenced in the archived URL files and other "Winner's Circle Driveway 5" advertisements offered by Lithia to support its claim of prior, continuous use in nationwide commerce. Those three dealerships did not use "Winner's Circle" and "Driveway 5" as marks to identify Lithia's goods and services – or even to identify all of Lithia's dealerships – but, rather, as advertisements and to help consumers find those three dealerships at the circle at the end of the 5th driveway on the Grumman Drive strip.

Car Body contends that Lithia provides no evidence to corroborate its naked assertions of prior, continuous, "extensive" use of an unregistered DRIVEWAY mark in nationwide commerce "since at least 2016." At most, Car Body argues, Lithia's materials indicate that "Winner's Circle Driveway 5" and "Driveway-5" were used a long time ago by the three identified Lithia dealerships, not as a mark, but, instead, to help consumers find them on the Grumman Drive strip in Medford and, further, that they were retired years before Car Body applied to register its DRIVEWAY mark.

According to Car Body's reply, the webpages Lithia proffered have not been active for years and apparently were retrieved to facilitate Lithia's buy-out demands and litigation posture; and the headers expressly advertise "Vehicles for Sale in Medford,

Oregon" and target "Oregon Drivers." There was nothing nationwide about them.

Lithia's preliminary injunction representations about the acquisition and implementation are diminished by the definitive pronouncement of Lithia President and Chief Executive Officer, Bryan DeBoer, on July 22, 2020 (during Lithia's Q2 2020 Investor/Analyst Earnings Call) that Lithia had only recently "over the last few months" acquired and activated the domain as part of the July 2020 launch of its "new national brand name Driveway" (and not nine months earlier in October 2019, as Lithia now contends). Lithia did not even start including the URL in the press release listings of its websites until October 2020.

According to Car Body, overwhelming evidence shows that Lithia did not use a Driveway mark or brand before late 2020. Critically, there is no mention of a Driveway mark or brand in Lithia's voluminous SEC filings, press releases, investor presentations, and earnings calls until late July 2020, when it publicly announced – for the first time and with great fanfare – the rollout of its "**new** national [Driveway] brand" for its "in-home Driveway service experience that will launch later this quarter." [ECF No. 57, p.5] (emphasis added).

During Lithia's Q3 2020 Earnings Call on September 30, 2020 (about six weeks after Lithia filed its cancellation petition), Lithia CEO Bryan DeBoer again admitted that Lithia had just, during the past quarter, "unveiled Driveway as our e-commerce and in-home national brand." On October 21, 2020, DeBoer appeared in a nationally broadcast

interview boasting about Lithia's "new" national Driveway brand for its "new" e-commerce at-home product line.

Likewise, the "Trajectory and Roadmap" timeline in Lithia's April 2021 Investor Presentation (at p. 17) identifies 2020 as the year that Lithia "[l]aunche[d] [its] national brand, Driveway[,] to provide ecommerce digital home solutions."

In written correspondence and verified TTAB filings, Lithia repeatedly affirmed, represented, and admitted that the parties' use of a visually identical mark to sell the same and overlapping goods and services in the same and overlapping markets, through the same marketing channels, using the same sales techniques, and to the same customer base creates a likelihood of consumer confusion. In fact, likelihood of confusion was the asserted basis for its Petition seeking cancellation of Car Body's registered DRIVEWAY mark. Further, in its Petition, Lithia not only represented that the parties' use of the same mark caused a *likelihood* of consumer confusion, but it affirmatively represented that it *had* in fact *already* caused *actual* consumer confusion.

The **<u>evidentiary hearing</u>** disclosed the following additional facts:

Car Body's initial scope was only auto body repair. The company's proposed services expanded to include cleaning, detailing, mechanical repairs, and oil changes.

Joulet himself performed Google searches and looked on the USPTO website for use of the term "driveway." Lithia's name did not come up in these searches. Joulet testified that he was unaware of Lithia when Car Body submitted its trademark

application in July 2019. He said he first heard of Lithia on May 12, 2020, when he received a demand letter from Lithia's counsel.

Joulet wanted the name "Driveway" because it would enable him to expand into areas other than car body repair. An attorney confirmed for him that "Driveway" was available.

After receiving the May 12, 2020 demand letter, Joulet did further research and saw that "Winner's Circle Driveway 5" was being used by Lithia. He did not see Lithia using "Driveway" by itself for automotive products. Joulet concluded that Lithia had rights to "Winner's Circle Driveway 5," but not "Driveway," for automotive services.

Brightside Capital Management, a venture capital firm based in San Francisco, was the lead investor in a $750,000 financing round for Car Body Lab. It invested $150,000 in June/July 2019. At the time of the investment, Car Body Lab had a vision of expanding throughout the country, with a variety of auto-related services beyond body repair. When Brightside made the investment, Car Body Lab was not using the "Driveway" name or mark. Brightside anticipated that the company would be transitioning to the "Driveway" name.

Moreover, at the time of Brightside's initial investment, Car Body Lab was offering only car body repairs; it was not offering other services, such as in-your-driveway repairs. Brightside's founder, David Lambert, testified that Car Body Lab is not currently offering services other than car body repairing.

Plaintiff continued to use the name "Car Body Lab" even after it obtained the "DRIVEWAY" mark from the USPTO. Lambert testified that he believes that "Driveway" would be effective branding for the expanded market Car Body Lab is seeking to enter (i.e., beyond automobile body repairs), explained that he was initially concerned about its effectiveness, and noted that Car Body Lab has, as of now, been a successful investment for his company. Car Body Lab is operating under both names and has not transitioned to solely the "Driveway" mark in any market.

Joulet explained that Car Body did not file a lawsuit and seek injunctive relief earlier because the attorneys decided to engage in discovery (in the TTAB proceeding) to determine if Lithia had been using the "Driveway" mark in commerce (as opposed to "Winner's Circle Driveway 5") and because he started negotiations with Lithia.

## Applicable Legal Principles and Analysis

A preliminary injunction is an extraordinary and drastic remedy. To secure a preliminary injunction, a movant must show:

> (1) a substantial likelihood of success on the merits of the underlying case,
> (2) the movant will suffer irreparable harm in the absence of an injunction,
> (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest.

*Commodores Ent. Corp. v. McClary*, 648 F. App'x 771, 774 (11th Cir. 2016). The movant must "clearly establish[ ] the burden of persuasion" for each of these four elements. *Am.'s*

*Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1329 (11th Cir. 2014) (internal quotation marks omitted).

Because a litigant must meet all four prerequisites to obtain a preliminary injunction, failure to satisfy just one dooms the request. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (affirming the district court's denial of a preliminary injunction because the litigant's "unexplained five-month delay in seeking a preliminary injunction, by itself, fatally undermined any showing of irreparable injury").

"A showing of irreparable injury is the *sine qua non* of injunctive relief." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (emphasis added) (cleaned up). That showing of irreparable injury "must be neither remote nor speculative, but actual and imminent." *Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990); *see also Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975) ("An injunction is appropriate only if the anticipated injury is imminent and irreparable.").

If a party seeking a preliminary injunction fails to establish irreparable harm, a court is not required to address any of the three remaining elements. *Ne. Fla. Chapter of the Ass'n of Gen. Contractors*, 896 F.2d at 1285 (11th Cir. 1990) ("We need not address each element because we conclude that no showing of irreparable injury was made."); *see also U.S. Structural Plywood Integrity Coalition v. PFS Corp.*, No. 19-62225, 2020 WL 6544489, at *5, n. 8 (S.D. Fla. Nov. 6, 2020) (denying requested injunction in a Lanham Act case because the nine-month delay under the facts meant that irreparable harm could not be

established and choosing to not analyze the other three factors).

Plaintiff's failure to move for a preliminary injunction until approximately ten months after its counsel warned Lithia that it was infringing substantially undermines its claim of irreparable harm and a request for urgent relief. Moreover, there was almost an eight-month gap between the letter warning Lithia that it could be enjoined and the filing of the preliminary injunction motion.

As the Eleventh Circuit has explained: "A delay in seeking a preliminary injunction of even only a few months — though not necessarily fatal — militates against a finding of irreparable harm." *Wreal*, 840 F.3d at 1248 (citing *Siegel*, 234 F.3d at 1176–77). "Indeed, the very idea of a preliminary injunction is premised on the need for **speedy and urgent action** to protect a plaintiff's rights before a case can be resolved on its merits." *Id.* (emphasis added); *see also Seiko Kabushki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1356 (S.D. Fla. 2002) (noting that a plaintiff's "dilatory prosecution of its rights somewhat vitiates the notion of irreparable harm . . . and undercuts any sense of urgency . . . .").

"Imminent" harm includes "a consideration of whether the [p]laintiffs acted sufficiently quickly to obtain relief." *Thompson v. Merrill*, No. 2:16-cv-783, 2020 WL 3513497, at *3 (M.D. Ala. June 29, 2020) (denying motion for preliminary injunction because "lack of action" at "earlier points in time" can "hardly be considered acting with 'speed or urgency'").

"Courts (both in and outside the Eleventh Circuit) have held that unexplained delays of a few months negate any claim of irreparable harm on a preliminary injunction motion." *Pals Group, Inc. v. Quiskeya Trading Corp.*, No. 16-23905, 2017 WL 532299, at *6 (S.D. Fla. Feb. 9, 2017). As a court in the Southern District of New York stated: "[C]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998); *see, e.g., Magnet Commc'ns, LLC v. Magnet Commc'ns, Inc.*, No. 00-civ-5746, 2001 WL 1097865, at *1 (S.D.N.Y. Sept. 19, 2001) (denying preliminary injunction in face of three-month delay); *Greenpoint Fin. Corp. v. Sperry & Hutchinson Co.*, 116 F. Supp. 2d 405, 408-09 (S.D.N.Y. 2000) (denying preliminary injunction in face of four-month delay).

"[P]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiff's rights." *Seiko Kabushiki*, 188 F. Supp. 2d at 1355. Therefore, a plaintiff concerned about a harm truly believed to be irreparable would and should act swiftly to protect itself. Here, however, Plaintiff sat on its rights for ten months. *See generally Roberts v. Swearingen*, No. 8:18-cv-1062, 2018 WL 4620707 (M.D. Fla. Sept. 26, 2018) (denying motion for temporary restraining order after noting a four-month delay); *see also Badillo v. Playboy Entm't Grp., Inc.*, No. 8:04-cv-591-T-30TBM, 2004 WL 1013372, at *2 (M.D. Fla. Apr. 16, 2004) (preliminary injunction denied in part due to a nine-month delay).

22

In *Apple, Inc. v. Samsung Elecs. Co. (Apple I)*, the Federal Circuit affirmed the district court's denial of a preliminary injunction in part because Apple's two and a half month delay "undermined its claim of irreparable harm." 678 F.3d 1314, 1319 (Fed. Cir. 2012). "Delay, or too much of it, indicates that a suit or request for injunctive relief is more about gaining an advantage (either commercial or litigation advantage) than protecting a party from irreparable harm." *Badillo*, 2004 WL 1013372, at *2 (citing *Pippin v. Playboy Entm't Grp., Inc.*, No. 8:02–cv–2239–T–30EAJ, 2003 WL 21981990, at *2 (M.D. Fla. July 1, 2003)).

Framed by these fundamental principles, the timing scenario generated by Car Body makes it exceedingly difficult to agree that a 10-month delay would still permit a finding of irreparable harm. A delay of that length is fundamentally inconsistent with a need for prompt and immediate relief.

Turning again to *Wreal*, "the very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." 840 F.3d at 1248 (emphasis in original). Because Plaintiff's delay here belies its insistence on any such "need for speedy and urgent action," the motion fails to satisfy *Wreal*'s central holding. *See also Berber v. Wells Fargo Bank, N.A.*, 760 Fed. Appx. 684, 687 (11th Cir. 2019) (affirming district court order denying motion for preliminary injunction after noting that Plaintiff's "delay in seeking injunctive relief also suggests that the harm was not truly irreparable"); *cf. Powers v. Secretary, Florida Dep't of Corrections*, 691 Fed. Appx. 581, 583-84 (11th Cir. 2017) (district court did not clearly abuse

its discretion in determining that the plaintiff's "apparent (i.e., unexplained) delay in seeking relief undercut the claim of imminent irreparable injury.").

Car Body argues that only *unexplained* delay precludes a finding of irreparable harm. To be sure, Plaintiff is correct, to a point. *Wreal* did explain that the plaintiff-appellant failed to offer any explanation for its five-month delay and then noted that it could not "discern from the record any justification for the delay that would suggest that the district court made an error in judgment by pointing to the delay to find a lack of imminent irreparable harm." 840 F.3d at 1248. And *Wreal* did hold that the district court did not abuse its discretion in concluding that Wreal's "unexplained five-month delay in seeking a preliminary injunction, by itself, fatally undermined any showing of irreparable injury." *Id.*

But the mere fact that a party proffers an explanation does not automatically excuse a delay in seeking the extraordinary relief of a preliminary injunction.

An explanation, in and of itself, will not automatically and necessarily justify a significant delay; it must be a **good** explanation. *See, e.g., High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) ("Absent a *good explanation*, not offered or found here, 17 months is a substantial period of delay that militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." (emphasis added)); *Advanced Commc'n Design, Inc. v. Premier Retail Networks, Inc.*, 46 F. App'x 964, 984 (Fed. Cir.

2002) ("[W]e excuse delayed requests for Rule 65 relief when . . . the movant has offered a 'good explanation' for that delay.") (quoting *High Tech Med.*, 49 F.3d at 1557)).

In the instant case, Car Body explains that it was involved in some negotiations with Lithia and that it had another strategic decision for postponing the filing of a lawsuit and a motion for preliminary injunction — a preference to first obtain discovery from Lithia in the TTAB proceeding.

Of course, this "begs the question" of whether waiting while negotiating with the opposing party is a "good explanation." *Invue Security Products, Inc.*, No. 18-cv-2548, 2019 WL 4671143, at *7 (M.D. Fla. July 1, 2019) (recommending denial of motion for preliminary injunction after noting that delay in seeking a preliminary injunction "severely undermines a finding of irreparable harm.").

Without deciding whether a delay for the reasons proffered by Car Body might be deemed a good explanation in some other fact-based scenario, the Undersigned finds that the explanation urged by Car Body here is not an adequate explanation for the lengthy delay. *See, e.g.*, *Regions Bank v. Kaplan*, No. 8:16-cv-2867-T-23AAS, 2017 WL 3446914, at *3 (M.D. Fla. Aug. 11, 2017) ("Although reviewing the 13,000 documents and conducting 'due diligence' undoubtedly required some time, [plaintiff] fails to explain persuasively the protracted delay [of three months from bringing the action] in requesting a preliminary injunction, which delay belies [plaintiff's] claim of an imminent and irreparable injury."); *see also Capital Mach. Co. v. Miller Veneers, Inc.*, No. 1:09-cv-702-JMS-

TAB, 2010 WL 3000769, at *1 (S.D. Ind. July 28, 2010) (insufficient justification for delay where plaintiffs waited over a year into the litigation before requesting a preliminary injunction because they needed to conduct discovery before they could be sure they had sufficient evidence to request a preliminary injunction but failed to request expedited discovery).

> If the Court were to accept those arguments [*i.e.*, the need to investigate as a basis for the delay], then the necessity of moving expeditiously—a touchstone requirement for a preliminary injunction—could be brushed away and the irreparable harm prong could be eliminated by a lawyer citing a good faith 'need to investigate.'

*Tech Traders, LLC v. Insuladd Envtl., Ltd.*, No. 6:18-cv-754-Orl-40GJK, 2018 WL 5830568, at *3 (M.D. Fla. Nov. 7, 2018) (citing *Wreal*, 840 F.3d at 1248); *see also Menudo Int'l, LLC v. In Miami Prod., LLC*, No. 17-21559, 2017 WL 4919222, at *6 (S.D. Fla. Oct. 31, 2017) (finding that explanations that the plaintiff needed more time to "(1) complete its trademark registrations in twenty countries, (2) negotiate a resolution with Defendants, (3) learn the extent of Defendants' harm, and (4) find a local lawyer to file the lawsuit" were inadequate justifications for a one-year delay from the time of awareness of potential trademark infringement to the time of filing a motion for a preliminary injunction).

*Seiko Kabushiki* addresses a situation where a plaintiff, similar to Car Body's contention here, sought to justify a delay in seeking injunctive relief by explaining that it was trying to reach a resolution. 188 F.Supp.2d at 1356. The Court there found that "[e]ven giving [p]laintiff credit for attempting to reach a settlement without litigation,

there remain[ed] a three-month delay between [p]laintiff's last communication with [d]efendants and commencement of this suit." *Id.* at 1356.

As such, the Court held that "[p]laintiff's dilatory prosecution of its rights . . . vitiate[d] the notion of irreparable harm," that it "undercut any sense of urgency, and, therefore, [p]laintiff . . . failed to demonstrate sufficient need for a preliminary injunction." *Id.* at 1356 (citing *Comic Strip, Inc. v. Fox Television Stations, Inc.*, 710 F. Supp. 976, 981 (S.D.N.Y. 1989)); *see also Lanvin, Inc. v. Colonia, Inc.*, 739 F. Supp. 182, 192 (S.D.N.Y. 1990) (denying preliminary injunction after a seven-month delay); *Comic Strip, Inc. v. Fox Television Stations, Inc.*, 710 F. Supp. 976, 981 (S.D.N.Y. 1989) (finding that plaintiff first learned of an infringement in August of 1988 and that plaintiff's failure to commence a lawsuit until March 1989 constituted a dilatory prosecution of plaintiff's rights to obtain a preliminary injunction).

As explained in *Menudo Int'l*, "*Seiko* is persuasive because it demonstrates that if a party delays filing a complaint after a substantial amount of time, this "'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'" 2017 WL 4919222, at *5 (first quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985); then quoting *Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F. Supp. 602, 609 (S.D.N.Y. 1979)).

**Two** time periods are relevant in determining whether a plaintiff acts promptly in seeking judicial relief: (1) a plaintiff cannot delay in filing a complaint after discovering a

potential infringer, and (2) a plaintiff must move quickly in filing a motion for a preliminary injunction once a complaint has been filed. *See Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 771–72 (E.D. Mich. 2003) ("Although plaintiffs were aware of the alleged effects of SaveNow on their businesses as early as August, 2002, they delayed nine months before bringing a motion for injunctive relief. Plaintiffs' delay in seeking a preliminary injunction undermines their allegation of irreparable harm."). If *either* is unreasonably delayed, then a finding of irreparable harm is significantly weakened. *Menudo Int'l*, 2017 WL 4919222, at *5.

Here, Car Body "waited far too long in filing a complaint after learning that [Lithia was] potentially infringing on the [Car Body] trademark." *Id.* at *6. Although Car Body's motion for a preliminary injunction was filed a week after it filed the Complaint, Plaintiff's *initial* delay in filing the lawsuit was substantial, and it has not cleared the first of the two timeliness hurdles.

Car Body has not presented a good explanation for the delay. Although its explanation *might* arguably justify a delay of a month (and perhaps even slightly longer), it does not sufficiently explain away a ten-month delay. *InVue Security Products*, 2019 WL 4671143, at *6-7; *see also Sprint Communications, Inc.*, No. 18-60788, 2018 WL 6653079 (S.D. Fla. July 5, 2018) (finding that the plaintiff had not reasonably explained a basis for its delay in seeking a preliminary injunction, concluding that it failed to establish irreparable harm, concluding that a preliminary injunction was unwarranted, and recommending

denial of the motion); *cf. Kohmetscher v. NextEra Energy Resources, LLC* 2020 WL 5639950, at *4 (S.D. Fla., Sept. 22, 2020) (explaining the Court "remains unconvinced" about the plaintiff's argument that their delay in seeking injunctive relief was due to "pre-suit negotiations" and denying motion for preliminary injunction).

## Conclusion

For the reasons outlined above, the Undersigned **respectfully recommends** that Judge Moreno **deny** Plaintiff's motion. Car Body has not established irreparable injury. At bottom, Plaintiff waited far too long to file its lawsuit and to seek a preliminary injunction, and its attempt to explain away the delay is unpersuasive and inadequate.

However, the Undersigned "cautions Defendant that this is not necessarily a victory." *Malicious Women Candle Co., LLC v. Cox*, No. 6:20-cv-2013, 2020 WL 7350399, at *2 (M.D. Fla. Dec. 14, 2020) (denying motion for preliminary injunction because of delay but noting that "the evidence of unfair competition seems strong, perhaps even overwhelming" and observing that the denial "does not mean that Defendant is absolved of consequences in the interim [-- i]t just means that Defendant may feel damages later rather than sooner.").

The Undersigned notes that: (1) Car Body currently holds the registered trademark; (2) Lithia's applications were denied; (3) the TTAB has apparently not yet issued any rulings in Lithia's favor; and (4) Lithia says it has prior rights in the

DRIVEWAY mark, based in common law, but its earlier history did not include use of DRIVEWAY as a standalone trademark in early 2016.[1] These points do not guarantee Car Body a win on the substance of any of its claims, nor do they serve as a prediction of likelihood of prevailing. They do, however, suggest that Lithia's pronouncement that "there is **no question** that Lithia is the senior user of the DRIVEWAY mark" may be subject to a non-frivolous challenge from Car Body. [ECF No. 35, p. 12] (emphasis supplied).

## Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Federico A. Moreno. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error

---

[1]   Lithia used DRIVEWAY with other marks, such as "DRIVEWAY 5" and "Winner's Circle," in the same presentation. Lithia argues that it displayed "DRIVEWAY" as the central and distinctive component of its advertising display since early 2016. [ECF No. 94]. Lithia contends that visual cues helped emphasize the DRIVEWAY mark within the advertising and marketing material and maintained the term as the dominant portion, notwithstanding the other words.

if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2020).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on June 21, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All counsel of record